UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO DARREL COLLINS,

                  Petitioner,                        Case Number 2:08-CV-11037
                                                      Honorable Lawrence P. Zatkoff

v.

CINDI CURTIN,

                  Respondent,

_____/


**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**


      This matter is before the Court on Petitioner Mario Darrel Collins' petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan, challenges his conviction for first-degree premeditated murder, MICH. COMP. LAWS 750.316, assault with intent to commit murder, MICH. COMP. LAWS 750.83, carrying a concealed weapon, MICH. COMP. LAWS 750.227, and commission of a felony with a firearm, MICH. COMP. LAWS 750.227b . For the reasons that follow, the Court denies the petition.


**I. Facts**

      Petitioner was charged with crimes arising out of the fatal shooting of Quinton Barfield and the shooting of Montez Newkirk occurring on the streets of Flint, Michigan on September 20, 2004. The dispute between Barfield and Petitioner concerned a two-dollar gambling debt owed by Petitioner to Barfield.

The evidence presented at trial showed that Barfield died as a result of single gunshot wound to the chest. The bullet passed through Barfield and struck Newkirk in the back, injuring him.

The prosecutor presented a number of witnesses who were socializing on and near the porch of a house on the evening of the shooting. LaDonna Balsis testified that she was standing on her porch when she saw Barfield arrive in a car and challenge Petitioner to a fight. Petitioner refuse to fight Barfield. After Barfield left the area, she saw Petitioner brandish a handgun. Ashley Balsis likewise testified to being present on the porch, and she also saw Petitioner hold his gun in the air after Barfield left the scene. Tony Hill testified that he helped convince Barfield to leave the area. After Barfield left, Hill saw Petitioner pull up his shirt to reveal a gun.

Several minutes later Hill saw Barfield return on foot. Barfield stopped to borrow Hill's cigarette, finished it, and then walked up to Petitioner. According to Hill, Barfield hiked up his pants and clenched his fists as he approached Petitioner. Petitioner and Barfield exchanged words, and Petitioner told Barfield to "stop walking up on him." Petitioner pulled a gun from his waist. Barfield was unarmed and had not thrown a punch. Petitioner asked Barfield to stop again, but Barfield took one more step anyway. Petitioner then put the gun to Barfield's chest and fired a single shot.

Jason Tapplin testified that he saw Barfield walk up to Petitioner, and Petitioner then pulled out a gun. According to Tapplin, Barfield's hands were at his side and Barfield did not make a fist or push Petitioner when Petitioner shot him. Barfield stumbled to the middle of the street and fell down. Tapplin saw Barfield's eyes roll back and blood run from his mouth. Jason Walker testified that he was also at the scene. He testified that Barfield had not done anything with his hands or attempted to punch Petitioner when Petitioner shot him.

Montez Newkirk testified that the first time Barfield arrived at the scene, Barfield looked at Petitioner "like he wanted to do something to him." Newkirk grabbed Barfield and told him to get back in his car. Newkirk testified that Barfield returned 20-to-30 minutes later on foot. This time Newkirk decided not to involve himself, and he was shot in the back while he was facing away from Barfield and Petitioner.

Detective Sergeant Shawn Ellis testified to interviewing Petitioner at the Flint Police Department. Petitioner waived his *Miranda* rights and agreed to talk. Petitioner told Ellis that he wanted to pay Barfield the two dollars he owed him, but Barfield wanted to fight. After Petitioner was punched in the jaw he started to run away. He said he heard a shot and fired back as he ran away from the area. When Ellis told Petitioner that his story was inconsistent with other witness accounts, Petitioner declined to talk further.

At trial Petitioner testified in his own defense. He testified about his dispute with Barfield, and testified that he repeatedly asked Barfield to back-off, but when it appeared to him that Barfield was reaching for something in his pants, he shot him in the chest because he was afraid that Barfield was about to pull a gun.

The jury found Petitioner guilty of first-degree murder, assault with intent to murder, carrying a concealed weapon, and felony-firearm. The trial court sentenced Petitioner to non-parolable life imprisonment for first-degree murder, and concurrent sentences of 12-to-15 years for assault with intent to murder, and 19-to-60 months for carrying a concealed weapon. Petitioner was sentenced to a consecutive two years in prison for committing a felony with a firearm.

## II. Procedural History

Petitioner filed a delayed request for appellate counsel in the trial court. The trial court appointed appellate counsel who filed a delayed application for leave to appeal in the Michigan Court of Appeals. The application raised two claims:

> I. Defense counsel was constitutionally ineffective in failing to elicit that, at the time of the shooting, Petitioner was aware that the police had recently arrested the decedent for carrying a concealed weapon in a motor vehicle, which would have supported Petitioner's self-defense claim.

> II. Due process requires vacating Petitioner's first-degree murder conviction where there was insufficient evidence of premeditation.

The Michigan Court of Appeals denied the delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Collins*, No. 272582 (Mich. Ct. App. Mar. 28, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same claims raised in the state court of appeals. The Michigan Supreme Court denied leave to appeal. *People v. Collins*, No. 133948 (Mich. Sup. Ct. July 30, 2007). The instant petition raises the same two claims Petitioner presented to the state courts.


## III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a state court has adjudicated the merits of the claims presented, habeas corpus relief may not be granted unless the state-court adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'Where . . . the state court did not assess the merits of a claim properly raised in a habeas petition,' however, 'the deference due under

AEDPA does not apply.'" *Dorn v. Lafler*, 601 F.3d 439, 442 (6th Cir. 2010), *quoting Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). Where there was no state-court adjudication on the merits of a habeas claim, the court reviews the claim de novo. *Id.*, *citing Maples*, 340 F.3d at 436-37.

In this case, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." This stock phrase "may not be equivalent to a 'final decision' on the merits, i.e., the disposition may simply signal that the court found the matters asserted unworthy of the expenditure of further judicial resources." *Halbert v. Michigan*, 545 U.S. 605, 618 (2005). The Sixth Circuit has held that, "[b]ecause [a] state court may have various reasons for denying an application for leave to appeal 'for lack of merit in the grounds presented,' and [a federal court] cannot discern from that language alone whether that decision was based on the merits of the case, we cannot conclude that it was an 'adjudication on the merits' pursuant to 28 U.S.C. § 2254(d)." *Dorn*, 601 F.3d at 443. Accordingly, when the state court issues a one-sentence order denying leave to appeal "for lack of merit in the grounds presented" with no further explanation, de novo review is appropriate. *Id.*

## IV. Analysis

### A. Ineffective Assistance of Counsel Claim

Petitioner first claims that his trial counsel was ineffective for failing to question Petitioner about his knowledge of Barfield's recent arrest for carrying a concealed weapon. Petitioner asserts that evidence that he knew Barfield had recently been arrested would have supported his self-defense claim. Respondent argues that the claim is meritless because defense counsel was able to establish that Petitioner believed the victim carried a weapon without having to utilize Barfield's arrest information.

To establish that counsel was ineffective, a habeas petitioner must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must establish that the attorney's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687; *see also Johnson v. Bell*, 525 F.3d 466, 486-87 (6th Cir. 2008). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance means simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (*quoting Strickland*, 466 U.S. at 688).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Petitioner asserts that trial counsel was ineffective for failing to specifically question him whether he was aware that the victim had recently been arrested for carrying a concealed weapon. It is well-established that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is

unnecessary. *See Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).

That being said, decisions as to what evidence to present are presumed to be a matter of trial strategy, and the failure to present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). When making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

It is clear from the record that defense counsel considered the possibility of presenting the arrest evidence at trial. Prior to trial, the prosecutor moved to exclude this evidence, and defense counsel argued that the evidence was relevant to the reasonableness of Petitioner's belief that the victim was armed at the time of the crime: "I think its proper, because my client knew that Mr. Barfield had been arrested for carrying the weapon in the motor vehicle. My client will, should he testify, has (sic) prior knowledge that Mr. Barfield carried a pistol and seen him with a pistol, and I think it goes to his state of mind. . . ." T 7-19-25, at 5-8. The trial court took the matter under advisement. Accordingly, this is not a case where defense counsel was ignorant of the possibility of using the evidence.

The question here, rather, is whether defense counsel's decision not to pursue this line of questioning was reasonable under the circumstances of the case. The record shows that defense counsel covered this same ground during Petitioner's direct examination testimony. Petitioner testified that he obtained a gun after Barfield left the scene the first time because "they said he was

coming back with a gun." T IV, at 70. Petitioner testified that when Barfield confronted him the second time, he thought Barfield was reaching for a weapon in his waistband. Defense counsel asked Petitioner: "Did you ever see him with a gun before?" and Petitioner responded that he had. Petitioner testified that when Barfield threatened to "f--k me up" and reached in his pants again, he believed that the victim was about to shoot him. T IV, at 75-77. Accordingly, rather than ask Petitioner about his knowledge of the victim's arrest for carrying a weapon, defense counsel elicited the more direct evidence that Petitioner had personally seen Barfield carry a weapon a before, and heard that Barfield left to obtain a gun before the shooting. It was not unreasonable for defense counsel to favor this line of questioning over Petitioner's knowledge of Barfield's previous arrest, where the admissibility of the later would be challenged by the prosecutor and was less relevant to Petitioner's state of mind at the time of the shooting.

Moreover, Petitioner has not demonstrated that he was prejudiced by his counsel's failure to pursue this specific line of questioning. All the eyewitnesses who testified at trial, including people describing themselves of friends of Petitioner, testified that Barfield was not armed with a weapon. Indeed, no witness other then Petitioner testified that Barfield made any gesture as if he was about to produce a weapon. Rather, the testimony of the eyewitnesses indicate that Barfield asked Petitioner if he wanted to fight, and at worst, that he clenched his fists. Petitioner himself testified that although we was told that Barfield was returning with a gun, that he did not leave the scene because he did not believe it. T IV, at 90. And Petitioner conceded that "if I would have walked away none of this would have happened." T IV, at 80. Because the jury obviously was not convinced by Petitioner's testimony that he thought Barfield was armed in part because he had personally seen him armed in the past, testimony that Petitioner also believed Barfield was armed

because he knew Barfiled had been arrested for possessing a weapon would not, with reasonable probability, have affected the outcome at trial. Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted.

### B. Insufficiency of the Evidence Claim

Petitioner next claims that there was insufficient evidence presented at trial to establish the element of premeditation to sustain his conviction for first-degree murder. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), *quoting Jackson*, 443 U.S. at 324 n.16. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003), *citing Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." Matthews, 319 F.3d at 788-89.

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberate and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602

(6th Cir. 2002)(*citing People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. App. 1992)). The elements

of premeditation and deliberation may be inferred from the circumstances surrounding the killing.

*See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing to People v. Anderson*,

531 N.W.2d 780 (Mich. App. 1995)). The interval between the thought and action should be long

enough to give a reasonable person sufficient time to subject his actions to a "second look" in order

to prove premeditation and deliberation. *See Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich.

2003)(*citing to People v. Morrin*, 187 N.W.2d 434 (Mich. 1971)). "A few seconds between the

antagonistic action between the defendant and the victim and the defendant's decision to murder the

victim may be sufficient to create a jury question on the issue of premeditation." *Id.* Therefore, a

sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, minutes,

or hours or more, dependant on the totality of the circumstances surrounding the killing. *See People

v. Berthiaume*, 229 N.W.2d 497 (Mich. 1975).

In the present case, there was sufficient evidence to establish that Petitioner had the requisite

premeditation and deliberation required for first-degree murder. Although there was evidence

presented which could have supported Petitioner's self-defense theory, this Court must view the

evidence in a light most favorable to the prosecution, and the jury was not required to accept

Petitioner's version of the facts that he thought Barfield was armed with a weapon. *See Williams v.

Jones*, 231 F. Supp. 2d 586, 595 (E.D. Mich. 2002). Rather, based on the testimony of the

eyewitnesses, the jury could have found that Petitioner shot Barfield in the chest and intended to kill

him due to some misguided notion that self-respect demanded him to do so, and not because he

believed Barfield was going to attack him with a gun.

Viewed most favorably to the prosecution, a reasonable trier of fact could have inferred

under the circumstances that the decision to shoot and kill the victim was a premeditated and deliberate one. After the first confrontation with Barfield, Petitioner brandished his gun and waived it in the air. The jury could have reasoned based on this evidence that Petitioner considered using his weapon prior to the fatal confrontation, and he was essentially warning Barfield that he would shoot him if he returned. Petitioner then saw Barfield return on foot, and therefore he had an opportunity to reflect on how he should react if Barfield approached him again. Given the lapse in time between the two confrontations, and the amount of time necessary for Barfield to "walk up" on Petitioner the second time, the evidence was sufficient to establish beyond a reasonable doubt to establish that the interval between Petitioner's thought and action was long enough to give a reasonable person sufficient time to subject his actions to a "second look." By his own admission, Petitioner could have avoided the whole situation by walking away. Instead, he decided to remain in the location and shoot Barfield if he was confronted again. Petitioner is therefore not entitled to habeas relief on his second claim.

## V. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claim.

## VI. Conclusion

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

> s/Lawrence P. Zatkoff
> LAWRENCE P. ZATKOFF
> UNITED STATES DISTRICT JUDGE

Dated: December 20, 2010

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 20, 2010.

> s/Marie E. Verlinde
> Case Manager
> (810) 984-3290